ORDERED.

Dated: March 31, 2021

*Jerry A. Funk*
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

In re:

JENNIFER L. RANSDELL
f/k/a JENNIFER HEATH,

    Debtor.
_____/

JENNIFER L. RANSDELL,

    Plaintiff,
v.

INTERNAL REVENUE SERVICE OF THE
DEPARTMENT OF THE TREASURY OF THE
UNITED STATES OF AMERICA,

    Defendant.
_____/

Case No. 3:19-bk-4795-JAF

Chapter 7

Adv. Pro. No. 3:19-ap-188-JAF

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This proceeding came before the Court upon a Complaint to Determine Secured Status and to Determine Dischargeability of Internal Revenue Service Tax Debt. (Doc. 1). The Court conducted a trial on December 1, 2020. In lieu of oral argument, the Court directed the parties to

submit post-trial memoranda in support of their respective positions. Upon the evidence and the applicable law, the Court makes the following Findings of Fact and Conclusions of Law.

**Findings of Fact**

Plaintiff and her former husband, Wayne Heath, were 50/50 owners of Wayne T. Heath Farms, Inc. (the "Farm") and Wayne T. Heath Seafood. (Tr. at 8). Plaintiff was also the vice president and secretary of the two companies and was the primary person who assisted the couple's accountant in preparing the companies' and the couple's individual federal tax returns. (Tr. at 8-9). The majority of Plaintiff's and Mr. Heath's income from 2012-2014 came from the companies.[1]

Plaintiff and Mr. Heath filed their 2012 federal income tax return on or about October 15, 2013. (IRS's Ex. 4). The tax return reflected adjusted gross income of $424,788, total tax of $80,709, and a self-calculated estimated tax penalty of $398, resulting in an amount owed of $81,107. (IRS's Ex. 1). They did not make a payment with the tax return.

Plaintiff and Mr. Heath filed their 2013 federal income tax return on October 15, 2014. (IRS's Ex. 5). The tax return reflected adjusted gross income of $787,633, total tax of $223,891, federal income tax withholding of $8,248, and a self-calculated estimated tax penalty of $536, resulting in an amount owed of $216,179. (IRS's Ex. 2). They did not make a payment with the tax return.

Plaintiff and Mr. Heath filed their 2014 federal income tax return on October 15, 2015. (IRS's Ex. 6). The tax return reflected adjusted gross income of $422,080, total tax of $87,755, and federal income tax withholding of $13,267, resulting in an amount owed of $74,488. (IRS's Ex. 3.) They did not make a payment with the tax return.

---

[1] Wayne T. Heath Seafood went out of business in 2012.

Plaintiff and Mr. Heath separated in May of 2013. (Tr. at 61). On June 25, 2013, Plaintiff filed a petition for dissolution of the marriage. (Pl.'s Ex. 4B). Although Plaintiff and Mr. Heath did not live together after May of 2013, they maintained a joint checking account until March of 2015. On August 21, 2013, two months before they filed their 2012 return, Plaintiff and Mr. Heath purchased a pony for their daughter for $18,000. (IRS's Ex. 24 at 2). Between July of 2013 and March of 2015, Plaintiff and Mr. Heath spent approximately $30,000 per month on personal expenses. (Tr. at 27). During that period, Plaintiff and Mr. Heath spent approximately $1,600 per month to board and care for the pony. Plaintiff and Mr. Heath owned a house in Virginia, where their businesses are located, a house in Amelia Island, Florida, and a condominium in Amelia Island, which had a $600 monthly association fee. Between December of 2013 and March of 2015, Plaintiff and Mr. Heath spent approximately $4,600 at the Amelia Island Club, a resort and golf club. Additionally, their children attended private school from 2012 until 2016 at a cost of $1,500 per month.

Plaintiff and Mr. Heath were under the threat of levies by the Internal Revenue Service ("IRS") from March of 2014 onward. (Tr. at 23: IRS's Ex. 29 at 32). The income from the Farm came in once a year when the crops were sold and was deposited into the Farm business account. (Tr. at 44; IRS's Ex. 32 at 32). Plaintiff and Mr. Heath transferred only the money they needed to pay personal expenses from the Farm account to their personal account. As a result, there was little left each month in the couple's personal account upon which the IRS could levy.

In July of 2014, Plaintiff moved from Amelia Island to Atlantic Beach, Florida. On March 4, 2015, a Consent Final Judgment of Dissolution of Marriage was entered (the "Divorce Decree"). (Pl.'s Ex. 5). The Divorce Decree provided that Mr. Heath would be responsible for the 2012-2014 taxes. It awarded the Farm to Mr. Heath. (Pl.'s Ex. 5). It provided that Mr. Heath was to

pay Plaintiff $1,000,000 for her interest in the business over a ten-year period. Additionally, the Divorce Decree required Mr. Heath to pay Plaintiff $5,000 per month for alimony and $7,000 per month for child support until the couple's youngest child reached the age of 18, which would have been 2021. Mr. Heath has made child support payments and some alimony payments but has not made any payments to Plaintiff for her interest in the business.[2]

In 2015, Plaintiff enrolled in college and was a full-time student until 2019. Since the dissolution of the couple's marriage, Plaintiff has lived on child support, alimony, and early withdrawals from her I.R.A. (Pl.'s Exs. 9-13). Between May of 2018 and April of 2019, Plaintiff sold various pieces of jewelry and a pistol in order to pay rent and buy groceries. (Tr. at 64-65).

Plaintiff's 2015-2017 federal tax refunds totaling $6,069 were applied to the 2012 tax liability. (Pl.'s Exs. 9-11; IRS's Exs. 29-31).[3] Plaintiff has not made any other payments on the tax liability. As of September 2020, the outstanding balance for 2012 was approximately $1,100[4], the outstanding balance for 2013 was approximately $326,000, and the outstanding balance for 2014 was approximately $110,000. (IRS's Exs. 29-31).

## Conclusions of Law

The issue before the Court is whether Plaintiff's 2012, 2013, and 2014 tax liabilities were discharged by her bankruptcy filing. An individual debtor who files a petition under Chapter 7 of the Bankruptcy Code is generally granted a discharge from all debts that arose before the filing of the bankruptcy petition. See 11 U.S.C. §727(b). The benefits of protection under the bankruptcy

---

[2] Since the divorce, Mr. Heath has never paid the full alimony due. In 2016 he paid $41,000. In 2017 he paid $40,000. In 2018 he paid $15,980. In 2019 he paid $25,685. (Pl.'s Exs. 10-13). As of December 1, 2020, Mr. Heath had paid $4,000 for 2020. (Tr. at 65).

[3] Plaintiff was not entitled to a refund for 2018 or 2019.

[4] The IRS transcript for the 2012 tax year reflects payments of approximately $108,000 in addition to the $6,069 applied from Plaintiff's refunds. No payments have been made on the 2013 and 2014 tax years.

laws are limited to the "honest but unfortunate debtor" who, despite his best efforts, is unable to meet the demands of his creditors. United States v. Fretz (In re Fretz), 244 F.3d 1323, 1326 (11th Cir. 2001); see also Grogan v. Garner, 498 U.S. 279, 286-287 (1991).  Congress has enacted a number of exceptions to the bankruptcy discharge. See 11 U.S.C. § 523.  Exceptions to discharge must be strictly construed in order to give effect to the "fresh start" policy of the Bankruptcy Code. See Equitable Bank v. Miller (In re Miller), 39 F.3d 301, 304 (11th Cir. 1994).  In order for a particular debt to be excepted from discharge, the party seeking the exception must prove by a preponderance of the evidence that a debtor's actions fit within the exception.  Garner, 498 U.S. at 291.

Section 523(a)(1)(C) of the Bankruptcy Code renders non-dischargeable any tax debt "with respect to which the debtor ... willfully attempted in any manner to evade or defeat such tax."  11 U.S.C. § 523(a)(1)(C).  In order to establish that a debtor has willfully evaded taxes pursuant to § 523(a)(1)(C) the Government must prove by a preponderance of the evidence that the debtor engaged in (1) evasive conduct with (2) a mental state consistent with willfulness.  United States v. Mitchell (In re Mitchell), 633 F.3d 1319, 1327 (11th Cir. 2011).

**Conduct Requirement of § 523(a)(1)(C)**

With regard to the conduct element, "the plain statutory language simply requires that the debtor have 'attempted in *any manner* to evade or defeat tax.'"  In re Fretz, 244 F.3d at 1329 (emphasis added) (internal citation omitted).  "The government satisfies the conduct requirement when it proves the debtor engaged in affirmative acts to avoid payment or collection of taxes, either through commission or culpable omission." United States v. Jacobs (In re Jacobs), 490 F.3d 913, 921 (11th Cir. 2007) (citations and quotation marks omitted). "The universe of evasive acts or omissions is broad: 'Congress did not define or limit the methods by which a willful attempt to

5

defeat and evade might be accomplished and perhaps did not define lest its effort to do so result in some unexpected limitation.'" Fesbach v. Internal Revenue Service (In re Fesbach), 974 F.3d 1320, 1327 (11th Cir. 2020) (quoting In re Fretz, 244 F.3d at 1327).

A debtor's failure to pay taxes, standing alone, does not "fall within the scope" of § 523(a)(1)(C)'s exception to discharge. Haas v. Internal Revenue Service (In re Haas), 48 F.3d 1153, 1156-1158 (11th Cir. 1995) (noting that a finding that a debtor's awareness of his duty to pay his taxes and the present ability to do so constitutes willful attempt to evade or defeat the tax would "render the general rule of discharge for tax liabilities an empty letter and defeat the central purpose of the Bankruptcy Code"). However, "large discretionary expenditures, when a taxpayer knows of his or her tax liabilities, is capable of meeting them, but does not, are relevant to § 523(a)(1)(C)'s conduct element." In re Jacobs, 490 F.3d at 926. Having said that, the Eleventh Circuit has never held that excessive spending alone can suffice to satisfy § 523(a)(1)(C)'s conduct requirement.[5] Where lavish spending has been held to satisfy the conduct element of § 523(a)(1)(C), such spending is generally accompanied by additional culpable behavior intended to prevent the IRS from reaching the debtor's assets. Looft v. United States (In re Looft), 533 B.R. 910, 919 (Bankr. N.D. Ga. 2015).

"[N]onpayment in conjunction with a broad range of other activities may satisfy the conduct requirement." Price- Davis v. United States (In re Price-Davis), 549 B.R. 537, 543 (Bankr. S.D. Fla. 2015). For example, the failure to file tax returns, coupled with the failure to pay taxes,

---

[5] On appeal to the Eleventh Circuit, the debtors in Fesbach argued that the bankruptcy and district courts erred by concluding that personal spending alone could satisfy § 523(a)(1)(C)'s conduct prong and urged the Court to review that conclusion de novo because it expanded the Court's interpretation of the statute. In re Fesbach, 974 F.3d at 1328. Citing to § 523(a)(1)(C)'s "in any manner" language and the statement in In re Jacobs that the "conduct requirement is …. satisfied by the debtor's large discretionary expenditures," the court noted that it was not convinced that the Feshbachs' characterization of the statute and case law was accurate. Id. However, the Court noted that it need not address the legal question of whether excessive personal spending alone can ever suffice to satisfy § 523(a)(1)(C)'s conduct requirement because there was evidence of other conduct which supported the bankruptcy court's finding that the debtors attempted to evade their tax liability. Id.

has been deemed to satisfy the conduct requirement. In re Fretz, 244 F.3d at 1329 (holding that debtor who failed to file income tax returns for over ten years and failed to pay tax satisfied § 523(a)(1)(C)'s conduct requirement despite no affirmative conduct to evade taxes); In re Mitchell, 633 F.3d at 1327 (holding that debtor who filed his 1998–2002 tax returns in June 2003 and failed to pay satisfied the conduct requirement). The Eleventh Circuit has also found that the following conduct warranted a finding of nondischargeability: 1) a debtor's transfer of the stock of three corporations of which he was the long-time sole owner to himself and his long-time live-in girlfriend turned wife as tenants by the entirety for little or no consideration, In re Griffith, 206 F.3d 1389, 1396 (11th Cir. 2000); 2) a debtor's titling of a home solely in his wife's name (but remaining on the mortgage and making all of the payments) to avoid the attachment of tax liens, causing his law firm to characterize his earnings as officer compensation not subject to tax withholding and then failing to pay estimated taxes on the earnings, purchasing numerous luxury vehicles through his law firm which he and his wife used for personal purposes, making substantial loans to his wife's business for no documented consideration, and making large discretionary expenditures including approximately $24,000 in charitable donations, approximately $20,000 for plastic surgery for his wife, "thousands of dollars' worth" of gifts to his children, $1,000 monthly for a golf club membership and entertaining expenses, and $600-$700 monthly for a leased Mercedes Benz for his wife at the time of trial, In re Jacobs, 490 F.3d at 925-926; and 3) debtors' spending of $8.5 million on personal expenses and charitable contributions, over a nine year period, while leaving a balance of more than $3.8 million on an approximate $5.2 million tax debt, coupled with using the offer-in-compromise process as a delay tactic, In re Fesbach, 974 F.3d at 1330-1331.

It is the Court's view that a finding that a debtor lived a "lavish lifestyle," engaged in "excessive personal spending," or made "large discretionary expenditures" is not sufficient, standing alone, to satisfy § 523(a)(1)(C)'s conduct requirement; additional culpable behavior intended to prevent the IRS from reaching the debtor's assets must be present. While the court in Jacobs found fault with the debtor's "large discretionary expenditures," the debtor's spending merely buttressed the court's finding that the debtor's other conduct constituted an attempt to evade or defeat tax. In re Jacobs, 490 F.3d at 913 (noting that § 523(a)(1)(C)'s conduct requirement was "further satisfied by [the debtor]'s large discretionary expenditures."). The debtors in Fesbach clearly engaged in excessive spending by spending $8.5 million on personal expenses and charitable contributions over a nine-year period. But such spending was accompanied by their use of the offer-in-compromise process as a delay tactic. In Jacobs and Fesbach, it was the debtors' other conduct, when considered in conjunction with their spending, that warranted a finding of an attempt to evade or defeat tax sufficient to satisfy § 523(a)(1)(C)'s conduct requirement.

### Mental State Requirement of § 523(a)(1)(C)

In order to satisfy the mental state requirement, the government must prove that a debtor (1) had a duty to file income tax returns and pay taxes; (2) knew he had such a duty; and (3) voluntarily and intentionally violated that duty. In re Fretz, 244 F.3d at 1330 (citing In re Griffith, 206 F.3d at 1396). In order to show that a debtor voluntarily and intentionally violated his duty to pay, it is not necessary to establish fraudulent intent. In re Jacobs, 490 F.3d at 924. "The third or willfulness component of the mental state requirement 'prevents the application of the exception to debtors who make inadvertent mistakes, reserving nondischargeability for those whose efforts

to evade tax liability are knowing and deliberate.'" In re Fretz, 244 F.3d at 1330 (quoting In re Birkenstock, 87 F.3d 947, 952 (7th Cir. 1996)).

### Application to the Instant Case

### Conduct Requirement

It is against the backdrop of these fact intensive determinations that the Court must decide whether Plaintiff's conduct constitutes an attempt to evade or defeat tax. The Court certainly recognizes that the terms "lavish lifestyle," "excessive personal spending," and "large discretionary expenditures" are relative terms. That having been said, the Court does not find that Plaintiff's spending during the 2013-2015 period rose to such a level.[6] Even if it did, however, the Court does not find that Plaintiff engaged in additional culpable behavior sufficient to satisfy § 523(a)(1)(C)'s conduct requirement. The IRS argues that Plaintiff evaded taxes by participating in structuring the couple's finances to keep assets in the Farm account instead of their personal account in order to avoid the risk of IRS levies. In other words, Plaintiff and Mr. Heath transferred only enough money from the Farm account to their personal account, sometimes daily, to cover their outstanding checks. The Court has reviewed dozens of cases, including those in which debtors resort to dealing in cash and those in which debtors use nominee bank accounts to avoid collection of taxes by the IRS. Each case has its own unique fact pattern. The Court finds this case to be a very close call. However, while the Court is troubled by Plaintiff's participation in maintaining the bulk of the couple's funds in the Farm account, the Court does not find that Plaintiff's conduct constitutes an attempt to evade or defeat tax.[7]

---

[6] The IRS does not appear to argue that Plaintiff's spending subsequent to that time was excessive.

[7] The IRS's inability to levy on the Farm account did not preclude it from collecting on the tax debt. The IRS could have levied on Plaintiff's and Mr. Heath's stock in the Farm.

**Mental State Requirement**

Despite having found that Plaintiff did not engage in evasive conduct as defined in § 523(a)(1)(C), the Court will address the mental state requirement. It is clear that Plaintiff had a duty to file income tax returns and pay taxes, knew that she had such a duty, and voluntarily and intentionally violated that duty. Thus, the mental-state requirement is clearly met although the conduct requirement is not.

**Conclusion**

The Internal Revenue Service has failed to establish that Plaintiff attempted in any manner to evade or defeat tax with respect to her 2012-2014 individual federal income taxes. Accordingly, her outstanding tax liability for those tax years is not excepted from her discharge pursuant to § 523(a)(1)(C). The Court will enter a separate order consistent with these Findings of Fact and Conclusions of Law.